UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE SULLIVAN

| | |
|---|---|
| MOHAMED ELTABIB, | )  ) |
| Plaintiff, | )  ) |
| v. | )  ) |
| DOHA BANK, LTD., | )  ) |
| Defendant. | )  )  ) |

Civil Action No.: 13 CV 0093

COMPLAINT

Plaintiff demands a
Trial by Jury

JAN 0 4 2013

Plaintiff, MOHAMED ELTABIB, by and through his attorneys, LEVINE & BLIT, PLLC, as and for his complaint against the Defendant, DOHA BANK, LTD., alleges upon information and belief:

## NATURE OF THE ACTION

1.     This action is brought to remedy unlawful discrimination based upon national origin contrary to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), discrimination based upon age contrary to the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), breach of contract, as well as any other causes of action that may be inferred from the facts set forth herein.

2.     Defendant's actions were unlawful and plaintiff brings this action for actual damages for lost wages and benefits, compensatory damages, punitive damages, reasonable attorney's fees, plus interest and costs of this action to fullest extent allowed by law, as well as any such other and further relief this Court deems just and proper.

## JURISDICTION AND VENUE

3.     Jurisdiction of this Court is appropriate pursuant to 28 U.S.C. § 1331.

1

4.      Venue of this Court is appropriate pursuant to 28 U.S.C. § 1391, as defendant is a resident of New York, New York at all times relevant to the complaint.

## THE PARTIES

5.      Plaintiff, Mohamed Eltabib ("Mr. Eltabib" or "plaintiff"), is a sixty-eight (68) year old Egyptian male and a resident of the State of New York residing at 20 Oakland Avenue, Lynbrook, NY 11563.

6.      Defendant, Doha Bank, Ltd. ("the Bank" or "defendant"), is an international private commercial bank incorporated in Doha, Qatar and existing in the State of New York with a principal place of business located at 100 Wall Street, 19th Floor, New York, NY 10005 ("the Branch").

7.      Upon information and belief, Doha Bank provides financial services to individuals and commercial, corporate and institutional clients internationally.

8.      At all times relevant to this complaint, Mr. Eltabib was an "employee" of Doha Bank within the meaning of applicable federal, state and local law.

9.      At all times relevant to this complaint, the Bank was an "employer" within the meaning of applicable federal, state and local law.

## PROCEDURAL HISTORY

10.      On or about January 17, 2012, plaintiff filed a complaint of discrimination based on national origin and age with the New York State Division of Human Rights ("NYSDHR"). The complaint was cross-filed with the United States Equal Employment Opportunity Division ("EEOC"). (Ex.A)[1]

---

[1] For all references to '(Ex.A)', please see 'Exhbibit A', Complaint of Mohamed Eltabib to NYSDHR, attached hereto.

11.     On July 13, 2012, NYSDHR dismissed the complaint.  On July 18, 2012, plaintiff's attorneys requested EEOC review of NYSDHR's decision.   On October 12, 2012, EEOC adopted the findings of NYSDHR, and issued a Dismissal and Notice of Suit Rights. (Ex.B)[2]

12.     This action commences within ninety (90) days of plaintiff's receipt of Notice of Suit Rights from EEOC.

## FACTUAL ALLEGATIONS

13.     Plaintiff is a sixty-eight (68) year old man of Egyptian national origin.

14.     In or about March of 2000, plaintiff was hired by defendant as Deputy Branch Manager of the Bank's Wall Street Branch.  As Deputy Branch Manager, plaintiff was second highest ranking employee within branch, second only to the Branch Manager.

15.     Plaintiff was continuously employed by the Bank as Deputy Branch Manager until his separation due to the Branch closing, in January, 2012.

16.     Plaintiff routinely received outstanding performance reviews, and was heralded for his achievements during his employment tenure.

17.     Upon information and belief, the Branch, as well as the international department of the Bank as a whole, were controlled by those of Pakistani and/or Indian national origin, and those younger than plaintiff.

18.     Upon information and belief, throughout plaintiff's employment tenure compensation to employees was largely based on national origin and age, with those who were of Pakistani or Indian origin, and younger, receiving more favorable salaries and pay increases than those older and of non-Pakistani or Indian national origin.

---

[2] For all references to '(Ex.B)', please see 'Exhbibit B', EEOC Dismissal and Notice of Rights, attached hereto.

19.     Upon information and belief, despite plaintiff's excellent performance throughout his employment tenure, salary increases would often be granted to those younger, and/or of Pakistani or Indian origin, while denied to plaintiff or granted to plaintiff at a much lower rate. Plaintiff, though senior management, received annual salary increases at a rate similar to that of clerical staff, while other Pakistani and/or Indian employees received raises at much higher rates. This practice continued up through plaintiff's separation from employment.

20.     For instance, upon information and belief though plaintiff was the second ranked employee in the Branch throughout his employment tenure, plaintiff was paid approximately $20,000 less than the Branch's Risk manager, who was of Pakistani national origin.

21.     Upon information and belief, throughout plaintiff's employment tenure promotions to employees were largely based on national origin and age, with those who were of Pakistani or Indian origin, and younger, receiving promotions more routinely than those older and of non-Pakistani or Indian national origin.

22.     Promotions were routinely denied to non-Pakistani or Indian staff, as well as older employees, as plaintiff's position from the day hired to fired was Deputy Branch Manager, with no promotion, despite his excellent performance.

23.     Upon information and belief, two Pakistani officers and branch manager were routinely reimbursed for travel expenses, and given airfare entitlements, up to the date of plaintiff's separation.

24.     At the end of plaintiff's employment tenure, the Bank refused plaintiff the airfare entitlement, a benefit of employment as well as a benefit of his employment contract that he received during most of his tenure (Ex.C)[3].

---

[3] For all references to '(Ex.C)', please see 'Exhibit C', Employment Agreement between Doha Bank and Mohamed H. Eltabib, dated March 9, 2000, attached hereto.

25.    In fact, up to the day of his separation from the Bank, the Bank refused to reimburse plaintiff approximately $7,500 to $10,000 for reimbursable travel expenses, despite the fact that:

a.    upon information and belief, the two Pakistani officers and branch manager were always reimbursed for travel expenses and given the airfare entitlement; and,

b.    such reimbursements and entitlement were specified in plaintiff's employment contract.

26.    Plaintiff was also denied a separation benefit at the time of his separation from employment, known as 'end-of-service gratuity'.

27.    Such end-of-service gratuity, was both a contractual promise to plaintiff, as well as a benefit paid to younger Pakistani and Indian employees at the time of their separation.

28.    More specifically, at the time the branch closed, this end-of-service gratuity was paid purely on the basis of national origin and age, with plaintiff being denied such a separation benefit due to his Egyptian national origin and age. Upon information and belief, a total of five staff members, including plaintiff, were entitled to the end of service gratuity at the time of plaintiff's separation from employment. Four of those five staff members received the end of service gratuity, all of whom were of Pakistani national origin. Plaintiff, the oldest of the staff members and a non-Pakistani, was the only eligible employee denied the end of service gratuity.

29.    As per Branch policy, "The Bank shall pay to the employee whose services are terminated, end of service gratuity as follows:

1.    Three weeks salary for each year of service of the first five years of continuous work.

2.    Four weeks salary for each year of service of the next five years of continuous work.

3.    Five weeks salary for each year of service of the next ten years of  continuous work." (hereinafter "Staff By Laws", Ex.D, p.6)[4]

---

[4] For all references to '(Ex.D)', please see 'Exhbibit D', Staff By Laws, attached hereto.

30.     As per plaintiff's twelve (12) years of service, plaintiff should have been paid end-of-service gratuity equal to forty-five (45) weeks of salary upon his separation from employment, above and beyond other separation benefits. Plaintiff did not receive this end-of-service gratuity.

31.     Upon information and belief, around time of plaintiff's separation, other, younger Pakistani and/or Indian employees received this end-of-service gratuity above and beyond other separation benefits.

32.     Plaintiff was denied this end-of-service gratuity due to his Egyptian national origin and age.

33.     In plaintiff's NYSDHR action against defendant, defendant pointed to a later proposed Branch policy as its sole defense for not paying plaintiff his end-of-service gratuity, while paying others. Specifically, defendant pointed to a proposed policy, dated August 2007, that restricted the end-of-service gratuity to those employees who were employed prior to January 1, 2000. This proposed policy, if ever in force at all, would have been in force for no longer than a month or so in 2007, as employees immediately had it removed by home office upon review.

34.     Only a month later, Defendant issued New York Branch Human Resources Policies and Procedures, dated September 2007, which removed all references to end-of-service gratuity including the restriction of only a month earlier which limited the gratuity to those employees who were employed prior to January 1, 2000.

35.     Thereafter, the Bank paid numerous Pakistani and/or Indian employees the end-of-service gratuity, as articulated in the original Staff By Laws, but refused to pay plaintiff end-of-service gratuity due to his national origin and age.

36.     The Bank's original Staff By Laws serve as a contract articulating, in part, the terms of plaintiff's employment. By refusing to pay plaintiff's end-of-service gratuity, the Bank breached this contract as to plaintiff.

37.     By refusing to pay plaintiff end-of-service gratuity, defendant discriminated against plaintiff based on his national origin and age.


## FIRST CAUSE OF ACTION AGAINST THE DEFENDANTS
### (Unlawful Discrimination based upon National Origin contrary to Title VII)

38.     Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 37, as if set forth fully herein.

39.     At all times relevant to this action, defendant was an "employer" within the meaning of Title VII and the plaintiff was an employee entitled to protection in his employment based upon his national origin.

40.     Pursuant to the acts and practices of the defendant as alleged above, the plaintiff was subjected to unlawful discrimination in the terms and conditions of his employment because of national origin.

41.     Defendant condoned the unlawful acts and practices as alleged above and, as a result, the plaintiff has suffered and will continue to suffer substantial losses, including loss of past compensation.

42.     As a further proximate result of defendant's unlawful acts and practices as alleged above, plaintiff has suffered and continues to suffer monetary and compensatory damages for, inter alia, mental anguish, severe and lasting embarrassment, humiliation, emotional distress and other incidental and consequential damages and expenses.

43.     The defendant acted outrageously and with malice and reckless indifference to the plaintiff's protected civil rights under Title VII and plaintiff is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION AGAINST THE DEFENDANTS

### (Unlawful Discrimination based upon Age contrary to the Age Discrimination in Employment Act)

44.     Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 43, as if set forth fully herein.

45.     At all times relevant to this action, defendant was an "employer" within the meaning of the ADEA and the plaintiff was an employee entitled to protection in his employment based upon his age.

46.     Pursuant to the acts and practices of the defendant as alleged above, the plaintiff was subjected to unlawful discrimination in the terms and conditions of his employment because of age.

47.     Defendant condoned the unlawful acts and practices as alleged above and, as a result, the plaintiff has suffered and will continue to suffer substantial losses, including loss of past compensation.

48.     As a further proximate result of defendant's unlawful acts and practices as alleged above, plaintiff has suffered and continues to suffer monetary and compensatory damages for, inter alia, mental anguish, severe and lasting embarrassment, humiliation, emotional distress and other incidental and consequential damages and expenses.

49.     The defendant acted outrageously and with malice and reckless indifference to the plaintiff's protected civil rights under the ADEA and plaintiff is entitled to an award of punitive damages.

## THIRD CAUSE OF ACTION AGAINST THE DEFENDANTS

### (Breach of Contract)

50.     Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 49, as if set forth fully herein.

8

51.     In consideration of his work for the company, defendants agreed to pay plaintiff end-of-service gratuity, as articulated in the Staff By Laws and as paid in practice to Branch employees.

52.     Plaintiff performed work for defendants at a high level and to the best of his ability.

53.     Defendants breached contract by failing to pay plaintiff the end-of-service gratuity.

54.     By reason of defendant breach, plaintiff suffered actual monetary damages in an amount yet to be determined, but in no event less than forty-five (45) weeks of his regular salary, or approximately $90,000.

## FOURTH CAUSE OF ACTION AGAINST THE DEFENDANTS
### (Breach of Contract)

55.     Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 54, as if set forth fully herein.

56.     In consideration of his work for the company, defendant subjected plaintiff to an employment agreement (Ex.C).

57.     As per the terms of the employment agreement, defendant was to reimburse plaintiff for travel expenses, "…for round trip excursion ticket purchased for self, his wife and unmarried children once in two years to travel to Egypt." (Ex.C, ¶2(d)).

58.     As per policy and practice, defendant continued to pay similar travel expenses for eligible employees.  Defendant breached plaintiff's employment contract by failing to pay plaintiff travel expenses totaling at least $7,500.00 for the years 2010-2011.

59.     By reason of defendant breach, plaintiff suffered actual monetary damages in an amount yet to be determined, but in no event less than seven thousand and five hundred dollars ($7,500.00).

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court enter a judgment containing the following relief:

(a)     An order prohibiting defendants from continuing the policy, practices, or custom of denying promotional opportunities to employees on the basis of national origin;

(c)     An award to plaintiff of his actual damages in an amount to be determined at trial for the loss of wages and benefits, including an award of back pay compensating plaintiff for defendant's failure to adequately promote and grant salary increases to plaintiff; and an award to plaintiff of his actual damages in an amount to be determined for defendant's failure to pay plaintiff end-of-service gratuity.

(d)     An award to plaintiff of compensatory damages in an amount to be determined at trial for the humiliation, mental anguish, and emotional distress sustained by him;

(e)     An award to plaintiff of compensatory damages in an amount to be determined at trial for defendant's breaches of contracts;

(r)     An award of punitive damages;

(g)     The costs of his reasonable attorney's fees and costs of the action, plus interest, to the fullest extent permitted by law; and

(h)     Such other and further relief that this Court deems just and proper.


## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury in this action pursuant to Rule 38 of the Federal Laws of Civil Procedure.

Dated: January 4, 2013
      New York, New York


                          LEVINE & BLIT, PLLC


                          Russell S. Moriarty, Esq.
                          Attorneys for Plaintiff
                          350 Fifth Avenue - Suite 3601
                          New York, NY 10118
                          Phone: (212) 967-3000
                          Fax:    (212) 967-3010

# EXHIBIT A



# New York State Division of Human Rights
## Complaint Form

### RECEIVED

JAN 1 7 2012

BROOKLYN REGIONAL OFFICE

## CONTACT INFORMATION

**My contact information:**

Name: Mohamed Eltabib

Address: 20 Oakland Avenue,                    Apt or Floor #:

City: Lynbrook                    State: New Yr    Zip: 11563-3321

## REGULATED AREAS

**I believe I was discriminated against in the area of:**

☑ Employment          ☐ Education              ☐ Volunteer firefighting

☐ Apprentice Training    ☐ Boycotting/Blacklisting    ☐ Credit

☐ Public Accommodations  ☐ Housing              ☐ Labor Union, Employment
(Restaurants, stores, hotels, movie                              Agencies
theaters amusement parks, etc.)   ☐ Commercial Space

**I am filing a complaint against:**

Company or Other Name: Doha Bank,

Address: 100 Wall Street, 19th. floor

City: New York          State: NY    Zip: 10005

Telephone Number: 212    509    4030
                  (area code)

Individual people who discriminated against me:

Name: Chris Fellner          Name: C K Krishnan

Title: Head of internat.Banking    Title: Regional Manager

## DATE OF DISCRIMINATION

The most recent act of discrimination happened on:    January    07    2012
                                                      month      day    year

3

JDM

## BASIS OF DISCRIMINATION

*Please tell us why you were discriminated against by checking one or more of the boxes below.*

 You do not need to provide information for every type of discrimination on this list. Before you check a box, make sure you are checking it only if you believe it was a reason for the discrimination. Please look at the list on Page 1 for an explanation of each type of discrimination.

**Please note:** Some types of discrimination on this list do not apply to all of the regulated areas listed on Page 3. (For example, Conviction Record applies only to Employment and Credit complaints, and Familial Status is a basis only in Housing and Credit complaints). These exceptions are listed next to the types of discrimination below.

### I believe I was discriminated against because of my:

| | |
|---|---|
| ☑ **Age** *(Does not apply to Public Accommodations)*<br>Date of Birth: 11/9/44 | ☐ **Genetic Predisposition** *(Employment only)*<br>Please specify: |
| ☐ **Arrest Record** *(Only for Employment, Licensing, and Credit)*<br>Please specify: | ☐ **Marital Status**<br>Please specify: |
| ☐ **Conviction Record** *(Employment and Credit only)*<br>Please specify: | ☐ **Military Status:**<br>Please specify: |
| ☐ **Creed / Religion**<br>Please specify: | ☑ **National Origin**<br>Please specify:<br>Please see explanation below |
| ☐ **Disability**<br>Please specify: | ☐ **Race/Color or Ethnicity**<br>Please specify: |
| ☐ **Domestic Violence Victim Status:**<br>*(Employment only)*<br>Please specify: | ☐ **Sex**<br>Please specify: ☐ **Female**  ☑ **Male**<br>☐ **Pregnancy**<br>☐ **Sexual Harassment** |
| ☐ **Familial Status** *(Housing and Credit only)*<br>Please specify: | ☐ **Sexual Orientation**<br>Please specify: |

☑ **Retaliation** *(if you filed a discrimination case before, or helped someone else with a discrimination case, or reported discrimination due to race, sex, or any other category listed above)*

Please specify:

 Before you turn to the next page, please check this list to make sure that you provided information **only** for the type of discrimination that relates to your complaint.

4

# EMPLOYMENT DISCRIMINATION

*Please answer the questions on this page only if you were discriminated against in the area of employment. If not, turn to the next page.*

**How many employees does this company have?**

a) 1-3    b) 4-14    c) 15 or more    (d) 20 or more    e) Don't know

**Are you currently working for the company?**

☐ Yes

Date of hire: ( __4__ / __1__ / __2000__ )   What is your job title? _DEPUT CHIEF MANAGER_
                Month    day    year

☑ No

Last day of work: ( January / 20th / 2012 )   What was your job title? Deputy Manager
                  Month    day    year

☑ I was not hired by the company

Date of application: ( April / 1st / 2000 )
                     Month   day   year

## ACTS OF DISCRIMINATION

**What did the person/company you are complaining against do? Please check all that apply.**

☐ Refused to hire me

☐ Fired me / laid me off

☐ Did not call me back after a lay-off

☐ Demoted me

☐ Suspended me

☐ Sexually harassed me

☐ Harassed or intimidated me (other than sexual harassment)

☐ Denied me training

☐ Denied me a promotion or pay raise

☐ Denied me leave time or other benefits

☑ Paid me a lower salary than other workers in my same title

☐ Gave me different or worse job duties than other workers in my same title

☐ Denied me an accommodation for my disability

☐ Denied me an accommodation for my religious practices

☐ Gave me a disciplinary notice or negative performance evaluation

☑ Other: _Treated differently, offered end service gratuity less than other Manager- A.Nisar_ + OTHERS

5

**DESCRIPTION OF DISCRIMINATION -** for <u>all complaints</u> *(Public Accommodation, Employment, Education, Housing, and all other regulated areas listed on Page 3)*

*Please tell us more about each act of discrimination that you provided information about on Pages 3 and 4. Please include dates, names of people involved, and explain why you think it was discriminatory.* **PLEASE TYPE OR PRINT CLEARLY.**

I joined Doha Bank,100 Wall Street on April 1st.2000, and signed an employment contract, at which time the branch had no formal HR policy. In 2000 , the branch Chief Manager and Me developped HR policy based on the Bank's Head Office , Doha,Qatar policy. The policy stated end of service gratuity for all staff as follows:
3 weeks per annum for the first five years of service
4 weeks per annum for the following five years of service
5 weeks per annum thereafter.
Policy effective date July 2000.

On Sept.2011, the Bank undertaken volantarily liquidation of the New York branch, and paid end of service benefits to the following staff as per policy: T.Siddiqui, M.Ramlochan. The bank also paid to the branch manager, A.Nisar, who retired in 2009 end of service grautity based on his contract with the bank - 3 months ( identical to my contract) plus amount due under the branch HR policy as stated above.

In January 7th.2012, the bank delivered to me a separation agreement, omitted end of service gratuity due to me as per the HR policy ( 27 weeks for the period of year 2000 up to 2008 date the bank board decided to end this benefits). That means I was treated differently from all staff on board in year 2000.

I was denied end of service benefits as per bank HR policy, where as A.Nisar was offered this benefits ( Contract end of service benefits plus end of service gratuity as per HR policy), also I received less than T.Siddiqui and R.Ramlochan who were on board in 2000, who received end of service benefits as per HR policy.

The bank continued to discriminate against me even at their self liquidation time, I was hired as Deputy Chief Manager, the second branch senior officer after Chief Manager, however, in 2007, the bank hired risk manager and paid him About 20K more than me.

I received several verbal promises from Top management in the Head office for salary adjustment , promises never materialized despite my Excellent performance to protect the bank and the shareholders interest.
Also my employment contract includes a provision for family travel expense every two years, the bank advised that they will void this benefits without my consent. As every amendment to the contract requires my consent I do not accept this revision and claim travel expense amounting to USD7500, plus end of service gratuity for 27 weeks. ( SEE ATTACHED)

*If you need more space to write, please continue writing on a separate sheet of paper and attach it to the complaint form.* **PLEASE DO NOT WRITE ON THE BACK OF THIS FORM.**

7

Plus all separation agreement offer terms.

(For additional information, the complete end of service gratuity package according to the HR policy was offered to the following Age group: 42 , 55 , 59),  all were on Bank service in 2000 like me.

## NOTARIZATION OF THE COMPLAINT

Based on the information contained in this form, I charge the above-named Respondent with an unlawful discriminatory practice, in violation of the New York State Human Rights Law.

By filing this complaint, I understand that I am also filing my employment complaint with the United States Equal Employment Opportunity Commission under the Americans With Disabilities Act (covers disability related to employment), Title VII of the Civil Rights Act of 1964, as amended (covers race, color, religion, national origin, sex relating to employment), and/or the Age Discrimination in Employment Act, as amended (covers ages 40 years of age or older in employment), or filing my housing/credit complaint with HUD under Title VIII of the Federal Fair Housing Act, as amended (covers acts of discrimination in housing),as applicable. This complaint will protect your rights under Federal Law.

I hereby authorize the New York State Division of Human Rights to accept this complaint on behalf of the U.S. Equal Employment Opportunity Commission, subject to the statutory limitations contained in the aforementioned law and/or to accept this complaint on behalf of the U.S. Department of Housing and Urban Development for review and additional filing by them, subject to the statutory limitations contained the in aforementioned law.

I have not filed any other civil action, nor do I have an action pending before any administrative agency, under any state or local law, based upon this same unlawful discriminatory practice.

I swear under penalty of perjury that I am the complainant herein; that I have read (or have had read to me) the foregoing complaint and know the contents of this complaint; and that the foregoing is true and correct, based on my current knowledge, information, and belief.

_MoHaMe J H. GITBP_
Sign your full legal name

Subscribed and sworn before me
This 17th day of JANUARY, 2012

_Signature of Notary Public_

County:                    Commission expires:

**JAMES MOFFATT**
Notary Public, State of New York
No. 01MO6083092
Qualified in Queens County
Commission Expires April 4, 2015

*Please note: Once this form is notarized and returned to the Division, it becomes a legal document and an official complaint with the Division of Human rights. After the Division accepts your complaint, this form will be sent to the company or person(s) whom you are accusing of discrimination.*

8

## ADDITIONAL INFORMATION

*The next three pages are for the Division's records and **will not be sent out** with the rest of your complaint.*

## Contact information

My primary telephone number:

516   456   6674
(area code)

____home phone
____work phone
__✓_cell phone
____other _____

My secondary telephone number:

516   599   7523
(area code)

_✓_home phone
____work phone
____cell phone
____other: _____

My email address:  Eltabibsm1@yahoo.com

Last four digits of my Social Security number: 3922

Contact person *(someone who does not live with you but will know how to contact you if the Division cannot reach you):*

Name: Magda Eltabib

Telephone number: 516   281   6065
(area code)

Relationship to me: Spouse

## Special Needs

I am in need of: a) A translator *(if so, which language?):* _____

b) Accommodations for a disability: _____

c) Other: _____

## Settlement / Conciliation:

To settle this complaint, I would accept: *(Please explain what you want to happen as a result of this complaint. Do you want a letter of apology, your job back, lost wages, an end to the harassment, etc?)*

To receive 27 weeks end of service gratuity as per bank HR policy- for the period of year 2000 to year 2008, same as A.Nisar who retired and received end of service benefits based on his contract with the bank (3months) plus benefits as per HR policy stated above ( We share same contract terms and conditions).  I also claim USD7500 for travel expenese as per contract.

**Witnesses:**

The following people saw or heard the discrimination and can act as witnesses:

Name: _____   Job title: _____

Telephone number: _____   _____   _____

Relationship to me: _____

What did this person witness?: _____


Name: _____   Job title: _____

Telephone number: _____   _____   _____

Relationship to me: _____

What did this person witness? _____


Name: _____   Job title: _____

Telephone number: _____   _____   _____

Relationship to me: _____

What did this person witness? _____

*If you have more witnesses, please write their names and information on a separate sheet of paper and attach it to this form. Please do not write on the back of this form.*


**Additional Details:**


**I complained about the discrimination to:**
*(If you reported the discrimination, please indicate whether you went to a supervisor, a manager, the owner of the company, your human resources office, your union, etc.).*

Bank regional manager,who relayed claim to HR, and International Div. in Doha, Qatar
_____


**The date I complained was:** <u>January</u>   <u>10th</u>   <u>2012</u>
                                           month        day        year

**The nature of my complaint was:**
          *(How exactly did you complain about the discrimination? Did you talk to someone about it? Did you make a formal written complaint or union grievance? What did you say?)*

A formal written complaint - a copy attached


11

**This is what happened after I complained:**
*(Was your complaint investigated? Was any action taken in response to your complaint? Did the discrimination stop? Did you experience retaliation for complaining?)*

No reply .

**I did not complain about the discrimination because:**
*(If you never reported the discrimination, please explain why).*

**Examples of other people who were discriminated against in the same way as I was:**
*(For example, people who were harassed by the same manager, disciplined or terminated for the same reasons, did not receive an accommodation for the same reasons, etc.).*
*If you are complaining about discrimination relating to race, national origin, age, religion, etc. please describe their races, national origins, ages, religions, etc.*

**Examples of other people who were treated better than I was:**
*(For example, people who were not fired for doing the same thing you were fired for, people who were doing the same job but making more money, people who were allowed to stay in the store while you were told to leave, etc.).*
*If you are complaining about discrimination relating to race, national origin, age, religion, etc. please describe their races, national origins, ages, religions, etc.*

A.Nisar, we share the same contract conditions and terms,  T.Siddiqui and
R.Ramlochan,A.Husnain (all of Pakistani /Indian origin)

12

# EXHIBIT B

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: **Mohamed Eltabib**<br>**20 Oakland Avenue**<br>**Lynbrook, NY 11563-3321** | From: **New York District Office**<br>**33 Whitehall Street**<br>**5th Floor**<br>**New York, NY 10004** |
|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **16G-2012-01387** | **Holly M. Woodyard,**<br>**Investigator** | **(212) 336-3643** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ]   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[X]   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]   Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_Kevin J. Berry,_
**Kevin J. Berry,**
**District Director**

October 12, 2012
(Date Mailed)

Enclosures(s)

cc:

**DOHA BANK, LTD.**
**Attn: CK Krishnan, Regional Mgr.**
**100 Wall Street, 19th Floor**
**New York, NY 10005**

**Russell S. Moriarty, Esq.**
**Levine & Blit, PLLC**
**350 Fifth Avenue, Suite 3601**
**New York, NY 10118**

Enclosures(s)

cc:

**Michael J. Lebowich, Esq.**
**Proskauer Rose, LLP**
**11 Times Square**
**New York, NY 10036-8299**

# EXHIBIT C

# EMPLOYMENT AGREEMENT

AGREEMENT dated as of March 9th, 2000, by and between Doha Bank, a corporation existing under the laws of the State of Qatar (the "Company") and Mohamed H. Eltabib ("Deputy Manager").

## SECTION 1.  EMPLOYMENT

(a)  **Position.**  The Company agrees to employ Deputy Manager, and Deputy Manager agrees to serve, as Deputy Manager of the Company or in such comparable position as the Company may specify.

(b)  **Principal Office.**  Deputy Manager's principal office shall be at the principal executive offices of the Company in New York, New York, except for reasonable business travel obligations commensurate with Deputy Manger's position, and except as may be required by Company in its reasonable discretion.

(c)  **Duties and Powers.**  Deputy Manager shall have the customary duties, powers, responsibilities and authority of a Deputy Manager of the Company. Deputy Manager shall perform such duties and exercise such powers upon such terms and conditions as the Company or Chief Manager/General Manager of the Company's New York, New York office shall reasonably impose. Deputy Manager shall devote his full working time and best efforts to the performance of his duties under this Agreement, except that, with the consent of the Company (which consent shall not be unreasonably withheld), Deputy Manager may engage in charitable and community affairs activities and agrees to inform the Company of participation in any meaningful or recognized charitable or civic functions. Deputy Manager agrees that participation as a member of a corporate board will only be undertaken with permission of the Company.

(d)  **Termination of Employment and Notice.**  This agreement shall continue until terminated pursuant to the terms hereof. Either the Company or Deputy Manager may elect to terminate the employment of Deputy Manager at any time with or without cause. Any termination of employment by the Company for Permanent Disability or for Cause, as defined herein, shall only become effective after the notice periods provided in Section 4 or 5, respectively. Any termination of employment by Deputy Manager (other than for death or Permanent Disability) shall only become effective 90 days after written notice to the Company.

## SECTION 2.  COMPENSATION AND BENEFITS.  During the employment of Deputy Manager hereunder, the Company shall pay Deputy Manager the following amounts and provide to Deputy Manager the following benefits:

1

(a)  **Gross Salary.**  The Company shall pay Deputy Manager a minimum annual gross salary ("Gross Salary") of USD 60,000.00 for the first three months (the probationary period) and USD 65,000.00 thereafter plus social security and medicade contribution in accordance with the Bank's ordinary payroll practices.  The Gross Salary shall not be decreased below this minimum during the term of this Agreement and shall be reviewed for increases by the Company at least annually in its sole discretion.

(b)  **Employee Benefits.**  The Company shall provide Deputy Manager with coverage under all employee benefit programs, plans and practices which the Company makes available to its Deputy Managers, including long term disability and accidental death. Medical, Dental and Hospitalization will be provided in the event the spouse of the Deputy Manager is not covered by her Employer.

(c)  **Vacation.**  Deputy Manager shall be entitled to 35 days of paid vacation (including holidays in between) each year, except that Deputy Manager shall not be entitled to any paid vacation during the first year of employment with the Company.

(d)  **Travel Expenses.**  In accordance with the Company's expenses policies, which may be amended from time to time, the Company shall reimburse Deputy Manager for round trip excursion ticket purchased for self, his wife and unmarried children (maximum three children) once in two years to travel to Egypt.

## SECTION 3. TERMINATION OF EMPLOYMENT BY THE COMPANY OTHER THAN FOR CAUSE OR BY DEPUTY MANAGER FOR GOOD REASON.

(a)  **Company's Obligations.**  If the Company terminates the full time regular employment of Deputy Manager other than for Cause and other than as a result of death or Permanent Disability, or if Deputy Manager terminates his employment for Good Reason, the Company shall pay Deputy Manager in full satisfaction of its obligations to him the following amounts:

(i)  The Gross Salary accrued to the date of termination of employment, such amount to be paid in full on the first business day of the first month following such termination; plus

(ii)  A cash lump sum payment (less applicable taxes) in respect of vacation days accrued according to Company's rules to the date of termination that Deputy Manager has not taken, paid in full on the first business day of the first month following such termination (the "Vacation Payment"); plus

(iii)  An additional amount (the "Termination Amount") equal to three months of Deputy Manager's Gross Salary at the annual rate in effect on the date of termination. The Termination Amount (less applicable taxes) shall be payable in a lump sum on the first business day of the first month following such termination.

2

(b) **Definition of Good Reason**. For the purposes of this Agreement, "Good Reason" shall mean any of the following events which occurs without Deputy Manager's prior written consent:

(i)     Any material breach by the Company of any material provision of this Agreement, including any material reduction by the Company of Deputy Manager's substantive duties or responsibilities or a material reduction by the Company in Deputy Manager's Gross Salary below the minimum set forth in paragraph 2 (b), above, other than in connection with any termination of employment by the Company for Cause or Permanent Disability or by the Deputy Manager other than for Good Reason; or

(ii)    The failure by the Company to obtain the assumption of this Agreement by any successor or assign of the Company as provided for in Section 13 hereof.

## SECTION 4.  TERMINATION OF EMPLOYMENT DUE TO PERMANENT DISABILITY OR DEATH.

If Deputy Manager shall be unable to perform the essential functions of his employment hereunder due to illness, physical or mental disability or other incapacity for a period of 180 days in any 365 consecutive day period ("Permanent Disability"), the Company may terminate the Deputy Manager's employment 30 days after written notice to Deputy Manager if Deputy Manager has not resumed the full time performance of his duties before the end of such 30-day period.  Deputy Manager's employment shall end automatically upon Deputy Manager's death.  Upon any termination for Permanent Disability or death, the Company shall pay Deputy Manager or Deputy Manager's estate in full satisfaction of its obligations to him the amount set forth in 3 (a)(i) and the Vacation Payment.

## SECTION 5. TERMINATION OF EMPLOYMENT BY THE COMPANY FOR CAUSE OR BY DEPUTY MANAGER OTHER THAN FOR GOOD REASON.

(a) **Company's Obligations**.  If the Company terminates Deputy Manager's employment for Cause, or if Deputy Manager terminates his employment other than for Good Reason and other than as a result of Permanent Disability or death, the Company shall pay Deputy Manager in full satisfaction of its obligations to him the amount set forth in 3 (a)(i).

(b) **Definition of Cause**. For purposes of this Agreement, "Cause" shall mean (i) any action by Deputy Manager involving material malfeasance or material misconduct in connection with his employment, (ii) the continuing failure or refusal by Deputy Manager to perform any material duties hereunder or to follow any lawful and reasonable direction of the Company, (iii) any breach of the provisions of Section 6 of this Agreement relating to nondisclosure of confidential information or any material breach of any other material provisioned of this Agreement by Deputy Manager, (iv) any material breach of Company policy, or (v) Deputy Manager's conviction of (A) any felony or (B) any misdemeanor involving dishonest, fraud, or moral turpitude.  For purposes of this paragraph, the determination of materiality shall be in the sole discretion of the Company, as exercised through its Board of Directors.



## SECTION 6. NONDISCLOSURE OF CONFIDENTIAL INFORMATION.

Deputy Manager shall not at any time during or after his employment hereunder, without the prior written consent of the Company, make any use of or disclose to any person or entity any Confidential Information, as defined herein, except (i) while employed by the Company, in connection with the business of and for the benefit of the Company; or (ii) as required by law. "Confidential Information" shall mean non-public information concerning the Company's financial data, strategic business plans, product development (or other proprietary product data), customer lists, transactions, marketing plans, personnel and compensation, and other non-public, proprietary and/or confidential information of the Company, its affiliates or its customers or clients.

## SECTION 7. OBLIGATIONS ON TERMINATION. Upon the termination of this agreement by either party, Deputy Manager shall:

(a)   Within seven (7) days of a request from the Company resign from each and every office held by him in any entity affiliated with Company and his membership in any organization acquired by virtue of his tenure in any such office, and should he fail to do so he hereby irrevocably authorizes the Company in his name, and on his behalf to sign any documents and do anything necessary or requisite to give effect thereto; and

(b)   Deliver to the Chief Manager/General Manager of the Company's New York, New York office all property in his possession or under his control belongs to the Company, including but not limited to keys, security and computer passes, computer hardware, software and files, cellular phones and beepers, facsimile machines, and all documents and other records (whether on paper, magnetic tape, computer disk or in any other form and including correspondence, lists of clients or customers, notes, memoranda, software, plans, drawing and other document and records of whatever nature and all copies thereof) made or compiles or acquired by Deputy Manager during his employment hereunder and concerning the business, finances or affairs of the Company or its clients or customers.

## SECTION 8. NO MITIGATION OF DAMAGES; OFFSET. Deputy Manager shall not be required to mitigate the damages provided under this Agreement by seeking other employment or otherwise.  Any payments made by the Company to Deputy Manager after the termination of employment shall not be subject to offset and shall not be reduced by any gross salary Deputy Manager received from any subsequent employer.

4

**SECTION 9.  NOTICES.**  All notices or communications hereunder shall be writing, addressed as follows:

> To the Company:
> > Doha Bank
> > 100 Wall Street, 19th Floor
> > New York, N.Y. 10005

> To the Deputy Manager:
> > Mohamed H. Eltabib
> > 20 Oakland Avenue
> > Lynbrook, N.Y. 11563

Any notice or communication shall be sent certified or registered mail, return receipt requested, postage pre-paid, addressed as above (or to such other address as such party may designate in a notice duly delivered as described above), and such notice shall be deemed to be given on the third business day after the actual date of mailing.

**SECTION 10.  RELEASE.**  Upon any termination of employment pursuant to Section 3, 4 or 5, each of the Company and Deputy manager agrees to enter into mutual general releases of all such party's rights and obligations in respect of the other party, other than such part's respective rights and obligations under this Agreement.  Deputy Manager (or, in the event of Deputy Manager's disability or death, his estate or personal representative) shall be required to provide such release to the Company before the company shall be required to make any payments to Deputy Manager under this Agreement.

**SECTION 11.  SEVERABILITY AND WAIVER.**  In the event that any one or more of the provisions contained in this Agreement should for any reason be held to be unenforceable, such unenforceability shall not effect any other provisions, but this Agreement shall be construed as if such unenforceable provision had not been contained herein.  Failure to insist on strict compliance with any of the terms of this Agreement shall not be deemed a waiver of such term unless such waiver is in writing signed by the party against whom it is asserted. Any waiver of any right hereunder at any time shall not be deemed a waiver at any other time or times.

**SECTION 12.  LEGAL FEES.**  Each party shall bear its own legal fees and other fees and expenses which may be incurred in enforcing its respective rights under this Agreement, except that following Change of Control, the Company shall bear the full cost of any legal or other fees and expenses which may be incurred by Deputy Manager in pursuit of any Good Faith claim hereunder.

**SECTION 13. ASSIGNMENT.**  This Agreement shall be binding upon and inure to the benefit of the heirs and representatives of Deputy Manager and the assigns and successors of the Company, but neither this Agreement nor any rights hereunder shall be assignable by deputy Manager (except by will or by operation of the laws of intestate succession)

5

or by the Company, except that the Company may assign this Agreement to any affiliate or to any successor (whether by merger, purchase or otherwise) to all or substantially all of the stock, assets or businesses of the Company, if such affiliate or successor expressly agrees to assume the obligations of the Company hereunder and, in the case of any assignment other than to an affiliate of the Company, Deputy Manager consents to such assumption, which consent shall be given if Deputy Manager reasonably determines that such successor is capable of satisfying the financial obligations to Deputy Manager hereunder as of the date of such assignment. Any assignment of this Agreement to a successor other than an affiliate shall release the Company, Parent and/or any guarantor of the Company's obligations under this Agreement from any and all further liability to Deputy Manager, other than for obligations which accrued prior to the date of such assignment.

**SECTION 14. AMENDMENT.** This Agreement may only be amended by a written agreement signed by Deputy Manager and the Company.

**SECTION 15. SURVIVAL.** The respective rights and obligations of the parties hereunder shall survive any termination of this Agreement to the extent necessary to the intended preservation of such rights and obligations.

**SECTION 16. GOVERNING LAW.** This Agreement shall be governed and construed under the laws of the State of New York, without reference to conflicts of law rules.

**SECTION 17. HEADINGS.** Section Headings in this Agreement are included for the convenience of reference only and shall not constitute a part of the agreement for any other purpose.

**SECTION 18. ENTIRE AGREEMENT.** This instrument contains the entire Agreement of the parties. It may be changed only by an agreement in writing signed by a party against whom enforcement or any waiver, change, modification, extension or discharge is sought.

**SECTION 19. WITHHOLDING.** The Company shall be entitled to withhold from any payment to Deputy Manager any amount of withholding required by law.

**SECTION 20. BREAKUP OF GROSS SALARY :** The Gross Salary will consist of following :

| | | First 3 Months | After 3 Months |
|---|---|---|---|
| Basic Salary | :: | USD 2,630.00 | USD   3,046.67 |
| Cost of Living | :: | USD   711.67 | 711.67 |
| House Allowance | :: | USD   833.33 | 833.33 |
| Transport Allowance | :: | USD   250.00 | 250.00 |
| Management Allowance | :: | USD   450.00 | 450.00 |
| Utilities | :: | USD   125.00 | 125.00 |
| **Total** | **::** | **USD 5,000.00** + S.S. & Medicaid | **USD   5,416.67** Plus S.S. & Medicaid |

6

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the day and year first appearing above.


**COMPANY:**

**DOHA BANK**


By:

Name: ANJUM NISAR

Title: CHIEF MANAGER


**DEPUTY MANAGER:**


Mohamed H. Eltabib


7

# CERTIFICATION REGARDING CORRESPONDENT ACCOUNTS
## FOR FOREIGN BANKS

*The information contained in this Certification is sought pursuant to Sections 5318(j) and 5318(k) of Title 31 of the United States Code, as added by sections 313 and 319(b) of the USA PATRIOT Act of 2001 (Public Law 107-56).*

This Certification should be completed by any **foreign bank** that maintains a **correspondent account** with any U.S. bank or U.S. broker-dealer in securities (a **covered financial institution** as defined in 31 C.F.R. 103.175(f)). An entity that is not a foreign bank is not required to complete this Certification.

A **foreign bank** is a bank organized under foreign law and located outside of the United States (see definition at 31 C.F.R. 103.11(o)). A bank includes offices, branches, and agencies of commercial banks or trust companies, private banks, national banks, thrift institutions, credit unions, and other organizations chartered under banking laws and supervised by banking supervisors of any state (see definition at 31 C.F.R. 103.11(c)).[†]

A **Correspondent Account** for a foreign bank is any account to receive deposits from, make payments or other disbursements on behalf of a foreign bank, or handle other financial transactions related to the foreign bank.

*Special instruction for foreign branches of U.S. banks:* A branch or office of a U.S. bank outside the United States is a foreign bank. Such a branch or office is not required to complete this Certification with respect to Correspondent Accounts with U.S. branches and offices of the same U.S. bank.

*Special instruction for covering multiple branches on a single Certification:* A foreign bank may complete one Certification for its branches and offices outside the United States. The Certification must list all of the branches and offices that are covered and must include the information required in Part C for each branch or office that maintains a Correspondent Account with a Covered Financial Institution. Use attachment sheets as necessary.

A.   The undersigned financial institution, __**DOHA BANK**__ ("Foreign Bank") hereby certifies as follows:

B.   **Correspondent Accounts Covered by this Certification:** Check one box.

[X]   This Certification applies to all accounts established for Foreign Bank by Covered Financial Institutions.

[ ]   This Certification applies to Correspondent Accounts established by _____(name of covered Financial Institution(s) for Foreign Bank.

---

[†] A "foreign bank" does not include any foreign central bank or monetary authority that functions as a central bank, or any international financial institution or regional development bank formed by treaty or international agreement.

Page 2

C.  **Physical Presence / Regulated Affiliated Status:** Check one box and complete the blanks.

[X]   Foreign Bank maintains a **physical presence** in any country. That means:
   * Foreign Bank has a place of business at the following street address:
     **GRAND HAMAD AVENUE, DOHA – STATE OF QATAR**, where
     Foreign Bank employs one or more individuals on a full-time basis and
     maintains operating records related to its banking activities.
   * The above address is in __**QATAR**__ (insert country), where
     Foreign Bank is authorized to conduct banking activities.
   * Foreign Bank is subject to inspection by __**QATAR CENTRAL BANK**__, (insert
     Banking Authority), the banking authority that licensed Foreign Bank to
     conduct banking activities.

[ ]   Foreign Bank does not have a physical presence in any country, but Foreign Bank
      is a **regulated affiliate.** That means:
   * Foreign Bank is an affiliate of a depository institution, credit union, or a
     foreign bank that maintains a physical presence at the following street address:
     _____, where it employs one or more
     persons on a full-time basis and maintains operating records related to its
     banking activities.
   * The above address is in _____ (insert country), where the
     depository institution, credit union, or foreign bank is authorized to conduct banking activities.
   * Foreign bank is subject to supervision by _____ (insert Banking
     Authority), the same banking authority that regulates the depository institution, credit union, or
     foreign bank.

[ ]   Foreign Bank does **not** have a physical presence in a country and is **not** a
      regulated affiliated.

D.  **Indirect Use of Correspondent Accounts:** Check box to certify.

[X]   No Correspondent Account maintained by a Covered Financial Institution may
      be used to indirectly provide banking services to certain foreign banks.
      Foreign Bank hereby certifies that it does not use any Correspondent Account
      with a Covered Financial Institution to indirectly provide banking services to
      any foreign bank that does not maintain a physical presence in any country and
      that is not a regulated affiliate.

E.  **Ownership Information:** Check box 1 or 2 below, if applicable.

[X]   1.  **Form FR Y-7 is on file.** Foreign Bank has filed with the Federal Reserve
          Board a current Form FR Y-7 and has disclosed its ownership information on
          Item 4 of Form FR Y-7.

[ ]   2.  **Foreign Bank's shares are publicly traded.** Publicly traded means that the
          shares are traded on an exchange or an organized over-the-counter market that
          is regulated by a foreign securities authority as defined in section 3(a)(50) of
          the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(50)).

If neither box 1 or 2 of Part E is checked, complete item 3 below, if applicable.

☐  3.  Foreign Bank has no owner(s) except as set forth below. For purposes of this Certification, **owner** means any person who, directly or indirectly, (a) owns, controls, or has the power to vote 25 percent or more of any class of voting securities or other voting interests of Foreign Bank or (b) controls in any manner the election of a majority of the directors (or individuals exercising similar functions) of Foreign Bank. For purposes of this Certification, (i) **person** means any individual, bank, corporation, partnership, limited liability company or any other legal entity; (ii) **voting securities or other voting interests** means securities or other interests that entitle the holder to vote for or select directors (or individuals exercising similar functions); and (iii) members of the same family* shall be considered one person.

| Name | Address |
|------|---------|
|      |         |
|      |         |
|      |         |

F.   **Process Agent:** Complete the following:

The following individual or entity: **C.K. KRISHNAN**__ is a resident of the United States at the following street address:

__**100 WALL STREET, NY 10005, NEW YORK, U.S.A.**_____, and is authorized to accept service of legal process on behalf of Foreign Bank from the **UNITED STATES OF AMERICA** , Secretary of the Treasury of the Attorney General of the United States pursuant to Section 5318(k) of title 31, United States Code.

---

* The same family means parents, spouses, children, siblings, uncles, aunts, grandparents, grandchildren, first cousins, stepchildren, stepsiblings, parents-in-law and spouses of any of the foregoing. In determining the ownership interests of the same family, any voting interest of any family member shall be taken into account

G.    General

Foreign Bank hereby agrees to notify in writing each Covered Financial Institution at which it maintains any Correspondent Account of any change in facts or circumstances reported in this Certification. Notification shall be given within 30 calendar days of such change.

Foreign Bank understands that each Covered Financial Institution at which it maintains a Correspondent Account may provide a copy of this Certification to the Secretary of the Treasury and the Attorney General of the United States. Foreign Bank further understands that the statements contained in this Certification may be transmitted to one or more Departments or agencies of the United States of America for the purpose of fulfilling such departments' and agencies' governmental functions.

I, **R. SEETHARAMAN** (name of signatory), certify that I have read and understand this Certification, that the statements made in this Certification are complete and correct, and that I am authorized to execute this Certification on behalf of Foreign Bank.

**DOHA BANK**
[Name of Foreign Bank]

[Signature]                                    +974 40155877
                                               [Phone Number]

**R. SEETHARAMAN**                             +974 44325345
[Printed Name]                                 [Fax]

**GROUP CEO**                                  seetharaman@dohabank.com.qa
[Title]                                        [E-mail address]

Executed on this  10th day of OCTOBER , 2011  .

**Received and reviewed by:**

Name: _____

Title: _____

For:

Date: _____

ATTACHMENT TO USA PATRIOT ACT CERTIFICATIONS
GLOBAL LISTING OF ALL RELATED AFFILIATES, SUBSIDIARIES AND BRANCHES

| Entity Name and Relationship to Entity indicated in Section A (i.e. affiliate, subsidiary or branch) | Street Address | | | | | Banking Authority |
| | Street | City | State | Postal Code | Country | |
|---|---|---|---|---|---|---|
| **Doha Bank** Dubai Branch Office | Ground Floor, 21st Century Tower Sh. Zayed Road, | Dubai | Dubai | P.O. Box 125465 | U.A.E. | Central Bank of UAE |
| **Doha Bank** Kuwait Branch | Ahmed Al-Jaber Street, | Abdullatif Al-Sarraf Tower, Block No.1, Plot No.3, | Sharq | P.O. Box 506, Safat 13006 | Kuwait | Central Bank of Kuwait |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Page 1

# EXHIBIT D

# DOHA BANK
## New York Branch

# ❖ Staff By Laws ❖

100 Wall Street, 19th Floor, New York, NY 10005, U.S.A.
Tel: (212) 509-4030 - Fax: (212) 509-6433 - Telex: 226605 - SWIFT : DOHBUS33

# DOHA BANK

## New York Branch

#### **** I N D E X ****

Page Number

## SECTION - I

| | |
|---|---|
| Introduction .... .... .... .... .... .... .... .... | 1 |
| Non-Discrimination Policy .... .... .... .... .... .... .... | 1 |
| Affirmative Action Statement .... .... .... .... .... | 1 |

## SECTION - II

| | |
|---|---|
| Part 1. Probationary Period .... .... .... .... .... .... | 2 |
| Part 2. Working Hours .... .... .... .... .... .... .... | 2 |
| Part 3. Lunch Period .... .... .... .... .... .... .... | 2 |
| Part 4. Change of Address or Family Status .... .... .... .... .... | 2 |
| Part 5. Salary .... .... .... .... .... .... .... | 2 |
| Part 6. Overtime Pay .... .... .... .... .... .... | 2 |
| Part 7. Attendance .... .... .... .... .... .... | 3 |
| Part 8. Sick Days .... .... .... .... .... .... | 3 |
| Part 9. Holidays .... .... .... .... .... .... | 4 |
| Part 10. Vacation .... .... .... .... .... .... | 4 |
| Part 11. Absence With Pay .... .... .... .... .... .... | 4 |
| Part 12. Telephone Calls .... .... .... .... .... | 5 |
| Part 13 Dress Guideline .... .... .... .... .... | 5 |
| Part 14. Annual Performance Planning & Evaluation .... .... .... .... | 5 |
| Part 15. Discipline .... .... .... .... .... .... .... | 5 |
| Part 16. Termination of an Employee's Services .... .... .... .... | 6 |

## SECTION - III

Part 17. Health Insurance    ....    ....    ....    ....    ....    ....    ....    7

Part 18. Bonus    ....    ....    ....    ....    ....    ....    ....    7

Part 19. Staff Loans Secured by Provident Fund Account    ....    ....    ....    7

*Part 20. Air Travel*    ....    ....    ....    ....    ....    ....    ....    7

Part 21. Provident Funds    ....    ....    ....    ....    ....    ....    ....    8

## SECTION - IV

Part 22.  Substance Abuse Policy    ....    ....    ....    ....    ....    ....    9

Part 23.  Confidential Information    ....    ....    ....    ....    ....    ....    9

Part 24.  Solicitation    ....    ....    ....    ....    ....    ....    ....    10

Part 25. Periodic Updates    ....    ....    ....    ....    ....    ....    ....    10

Part 26. Acknowledgements    ....    ....    ....    ....    ....    ....    10



# DOHA BANK
# NEW YORK BRANCH

## STAFF BY LAWS

## SECTION I

### INTRODUCTION

This document contains Doha Bank, New York branch staff by Laws ( Employee Handbook ) which are applicable to all personnel employed by Doha Bank, New York branch (the "Bank") in the United States of America. The rules in this Document must be observed by all employees.

Doha Bank reserve all rights to revise contents of this documents just as it has established them in the first place, and Employees will be notified of changes promptly in an appropriate manner.

All Employee are encourage to read and familiarize themselves with the contents of Staff By Laws, and to refer all questions, if any , to the Branch Chief Manager / Deputy Manager.

### Non-Discrimination Policy

Discrimination on the basis of an individual's race, religion, creed, color, sex, age, marital status, disability, national origin, or veteran's status are prohibited. We , at Doha Bank, require objectivity in your dealings with others and in your decision-making. Treat every one with whom you come into contact fairly in all respects.
Violations or this policy will result in employment termination.

### Affirmative Action Statement:

Doha Bank is committed not to discriminate against applicants or employees because of race, religion, creed, color, sex, national origin, age, disability, martial or veteran status.

We provide equal employment opportunity in all employment-related matters, recruitment, hiring, promotion , pay and benefits.

We pay all employees fairly based on performance and within salary ranges designed and approved by Our Head Office to reflect differences in duties and responsibilities.

# SECTION II
# PERSONNEL POLICIES

## PART 1. PROBATIONARY PERIOD

All applicants for employment will be placed on probation for a minimum period of three (3) months beginning the first working day of employment, which could be extended for the period of another three (3) months at the sole discretion of the Bank, keeping in view the performance of the employee under probation. During probationary period wages will be deducted for any absences. No notice or reason for termination of service during probation period in required from either side. The employee shall be considered automatically confirmed in service from the date of expiry of the probationary period unless a decision is issued extending His/Her probationary period or termination of His/Her services.

## PART 2. WORKING HOURS

The basic work is 40 hours per week. All personnel should be at their desk at 9:00 a.m. Monday through Friday. All personnel are to attend to their office duties up to 5:00 p.m. and are not to prepare to leave before that time. The salaries of employees are remuneration for their basic week's work of 8 hours a day (not including the one (1) hour lunch break available to each employee every day) or a total of 40 hours a week. If the Branch Manager makes an exception of these timings for an employee, such exception must be made in writing and kept in the employee's file.

## PART 3. LUNCH PERIOD

Lunch period is limited to one hour and must be taken in the designated time in accordance with Branch's lunch time schedule between the hours of 12:00 Noon and 2:00 p.m.. Any deviation from the designated time will require the consent of the branch Manager.

## PART 4. CHANGE OF ADDRESS OR FAMILY STATUS

If an employee changes his/her name, address, phone number or marital status, he/she must notify the Branch Chief Manager / Deputy Manager at once, preferably in advance of the change if possible. It is the responsibility of the employee to inform the Bank of any changes in the contact information . Current information is essential for notification in case of an emergency concerning the employee.

## PART 5. SALARY

Wages are paid to employees bi-weekly on every other Friday. Should pay day fall on a holiday the wages will be paid one working day prior to the due date. Except Deputy and Chief Manager who will be paid on monthly basis.

## PART 6. OVERTIME PAY

When the need arise, Employees may be requested to work overtime to meet work load demand, in which case employees will be compensated time and half.
Employee are not allowed to work overtime unless authorized by the Branch Management.

## PART 7. ATTENDANCE

When an employee is sick, or unable to come to work, he / she  must notify their respective Supervisor / Manager before 9:30 a.m. in order that the necessary adjustments can be made in the work assignments. Branch  employees are expected to share the work load whenever a team member is out sick.

We, Doha Bank, reserve the right to require proof – *such as medical documentation of the necessity for Medically related absences.*

During prolonged absences, we require you to contact us at least weekly to advise of your status and to give Advance notice when you will return to work.

Attendance and punctuality are extremely important.  A careful record of the employee's attendance and punctuality is maintained.

Employees are required to punch their respective time card in, out and for lunch time in accordance with lunch time schedule assignment.

Employees must expect that tardiness and unauthorized absence from employees' assigned duties will have an effect on their salary adjustments as well as their bonus, if any.  Of course, excesses eventually will result in termination from the Bank's employment.  Unauthorized absence may result in their immediate termination from the Bank's service.  However, absences for the following will be excused:

1.    Jury Duty.
2.    Active Duty from training as a member of a Reserve Component.
3.    Air National Guard.
4.    Army National Guard.
5.    Paid Leave of Absence.

## PART 8. SICK DAYS

The bank is not obligated to pay employees for days absent from work due to sickness, and absence because of illness without loss of pay is at the sole discretion of the Bank.  In the event of extended absence because of illness or accident, each case will be judged on its own merits.  A doctor's certificate should be produced  in all cases of illness for more than three (3) days' duration.

Following employee's confirmation, all employees are eligible to  avail non-cumulative sick and personal leaves during each calendar year as follows:

1.    Sick leave:       Maximum of three (3) days
2.    Personal leave:   Maximum of two (2) days.

Prior to availing of personal leaves, the employee must coordinate with the Branch Manager: otherwise Such leave will be treated as non-paid leave.

For new employee, these five (5) days of leave is pro-rated based on the starting quarter and will accrue at 1 ¼ per quarter each calendar year.  For employees with one year or more of service, the full five (5) days leave will be available as and when required at the Bank's discretion.

### PART 9.  HOLIDAYS

The Bank will be closed on Saturdays, Sundays and all legal holidays as announced by the Federal Reserve Bank Of New York.


### PART 10.  VACATION

A.  All clerical employees other than temporary will be entitled for the following annual vacation:

   1.  Employees with over six months' employment:
       One Week. (Five working days)
   2.  Employees with one year or more, but less than five years of employment:
       Two weeks ( Ten working days)
   3.  Employees with five years or more of employment:
       Three weeks. (Fifteen working days)

B.  Supervisors -  30 days ( Thirty Calendar days – working/non working days )
C.  Managers    - 30 days ( Thirty Calendar days - working/non-working days)
D.  Chief Manager / Deputy Manager  - 35 days (Thirty Five Calendar Days - working/non-working days)

Managers are  required to take at least two (2) consecutive weeks of vacation every year.  Any exemptions to this requirement must be documented and approved by senior management on a case-by case basis. continual exceptions are not permitted.

Vacation periods for less than one week normally are not permitted.  However for compelling reasons employees may communicate with their branch Manager / Deputy Manager  in the matter.  Each vacation period is to be arranged with the employee's branch manager in advance in January each year.  In any event, 15 days' prior notice from the exact schedule he or she prefers, selection of vacation period will be determined by Management based on the need of the Bank as planned at the beginning of each calendar year.

The carrying over of all or part of one year's vacation to the next year ordinarily is not permitted. Requests for carrying over of leave (which due to exigency of service could not be availed) to the next year must be made in writing to the branch Chief Manager / Deputy Manager and will require Head Office General Manager  approval before the end of that year.  The leave record of each employee must be maintained at the Branch.  All carry over vacations must be taken in the following year before End of March.
Vacation for more than 30 days are not permitted.


### PART 11.  ABSENCE WITH PAY

#### Absence due to an emergency:
Absence without loss of pay is granted at the sole discretion of the Bank Management .Employees are requested to obtain the Bank's management approval for leaves of absences.  In cases of emergency employees must complete and submit a leave of absence application form after they resume work.

It is the Bank's policy to minimize loss of earnings when a death in an employee's family required the employee to be absent on regularly scheduled working days, on or immediately following the date of the death.  To that end, an employee's branch manager may authorize normal straight time pay for the employee due to a death in the employee's family on the following schedule:

**Group A**: An employee is eligible for up to Three ( 3 ) consecutive days of paid leave in case of death of a spouse, mother, father, step-mother, stepfather, child, step child or adopted child, brother or sister.

**Group B**: An employee is eligible for up to two (2) consecutive days of paid leave for the death of a stepbrother, stepsister, grandparent, grandchild, mother-in-law, son-in-law or daughter-in-law.

## PART 12. TELEPHONE CALLS

The Bank's telephone facilities are required for the conduct of business. It is therefore requested that employees keep personal telephone calls to a minimum. Personal long distance calls are not permitted.

## PART 13. DRESS GUIDELINES

It is expected that all employees will exercise good taste and common sense as to proper business attire, and that all employees will dress in a professional and business like manner. No jeans, T-shirts, shorts or any such inappropriate clothing will be acceptable.

## PART 14. ANNUAL PERFORMANCE PLANNING & EVALUATION

There will be an annual performance evaluation of each employee. The review will be based on the information contained in the Performance Evaluation form. The performance evaluation will be by the Branch Manager with input from the immediate supervisor of the employee. The purpose of the review will be to determine an employee's performance level. Any increase in an employee's salary will be made on the basis of the last performance appraisal, job evaluation and merit at the discretion of the Bank.

## PART 15. DISCIPLINE

An employee who commits a breach of any section or part of service rules or who displays inefficiency or lack of effort or who knowingly does anything detrimental to the interest of the Bank, or who contravenes instructions issued to him/her in connection with his/her official work, or commits a misconduct or a breach of discipline, shall be liable to any of the following disciplinary actions at the Bank's discretion:

1.  Counseling
2.  If conduct continues, a written warning letter will be issued to the employee.
3.  Termination of service.

## PART 16. TERMINATION OF AN EMPLOYEE'S SERVICES

Unless specified otherwise, all employees of the Bank are employed by the Bank at will. The at-will relationship cannot be altered except by a written agreement signed by the General Manager Head Office. Each employee understands the he/she has the right to terminate his/her employment at any time with or without cause, and the Bank retains the same right. Further, each employee understands that false or misleading information given in an employment application submitted to the Bank or interviews with the Bank may result in his/her discharge. Services of the employee can be terminated with the approval of the General Manager , Head Office.

The employee's service shall terminate for any one of the following reasons:

1.   Dismissal from service
2.   Attainment of the retirement age-as determined by USA Social Security Act ( Sixty Five Years ).
3.   Death of the employee or if the employee sustains an injury or disease leading to complete disability to resume work
4.   Substantiation of the employee's non-eligibility and lack of efficiency during the probationary period.
5.   Lack of work.
6.   Overall layoff.

Upon termination the employee himself or by the bank, the notice period shall be as follows:-

a)   One complete month at least for the employee who spent in the Bank service one year to five years.
b)   Two months at least for the employee who spent more than five years in the bank service.

The Bank may dismiss the employee without notice or warning

a)   The Bank shall pay to the employee whose services are terminated, end of service gratuity as follows:

1.   Three weeks salary for each year of service of the first five years of continuous work.
2.   Four weeks salary for each year of service of the next five years of continuous work.
3.   Five weeks salary for each year of service of the next ten years of continuous work.
4.   Seven weeks salary for each year of service of the next continuous service years exceeding twenty years

b)   The employee shall be entitled after the first year of service.  A bonus against the part of the year in proportion to what he spent from that year in service.

c)   Salary in this article means:

Basic salary upon the termination of service in addition to cost of living allowance (if any) and any other allowances paid monthly as part of the salary.
d)   The date approved to calculate the number of years of service is the date in which the employee joins service of the bank.
e)   The end of service gratuity is calculated according the  following formula:

Total salary x no. of days of service due
30 days

f)   An employee should spend one complete year of service to be eligible for end of service gratuity.

# SECTION III

## EMPLOYEES BENEFITS

### PART 17. HEALTH INSURACE

Health insurance coverage is provided to all qualified employees of the Bank. Benefits under these plans will be according to the certificate the employee will receive when the employee comes into the plan. Details of the benefits covered under the health insurance plan are provided in the Plan Booklet which will be distributed to each qualified employee.

Qualified employees are:

All full time regular employees whose services with the Bank have been confirmed,

Employees hired on a temporary or daily wage basis will not be eligible for health insurance protection.

### PART 18. BONUS

Bonus will be paid at the discretion of Management and Head Office based on job performance. The manner in which such bonus is disbursed will be determined by Management Head Office. Temporary employees are not entitled to a bonus, however permanent part-time employees are entitled.

### PART 19. STAFF LOANS SECURED BY PROVIDENT FUND ACCOUNT

The Bank may consider personal loans for employees from time to time on a case by case basis, against their Provident Fund.

### PART 20. AIR TRAVEL

Manager/Deputy Manager are allowed Economy Class Air Ticket once in 2 years for Self, Spouse and Maximum 3 children's, from New York, USA to their home country.

## PART 21. PROVIDENT FUNDS

Employees who complete 3 months of service will be entitled to contribute 5% of his/her Basic salary towards provident fund deduction which will be matched by the bank.

The table below show the amount due to the employee from the provident fund upon termination of services

| Method of termination | Service Period (years) | Amount Due |
|---|---|---|
| -Termination of service by the employee or the Bank. | From one year to (3) Years | Amounts paid by employee + 50% of what the Bank paid + Returns |
|  | From (3) years to (5) Years | Amount paid by employee +75% of what the Bank paid + Returns |
|  | After (5) years | Total amount available in his/her provident fund account. Employee and Bank Shares. |

## PART 24. SOLICITATION

In order to prevent disruption in the operation of daily work duties and to protect employees from harassment, the Bank requires that solicitation and distribution of all literature not take place during working time or in working areas at any time work is being done in those areas. "Working time" does not include those periods of the workday when employees are properly not engaged in performing their work tasks and are away from designated working areas (e.g. meal times).

## PART 25. PERIODIC UPDATES

It should be noted that the Bank's Personnel Policy will be reviewed annually or earlier (if required) in order to encompass new activities and new requirements of law. It is each employee's responsibility to be mindful of each change to the Bank's Staff by laws.

## PART 26. ACKNOWLEDGEMENTS

Each employee is required to sign an acknowledgement of this Policy that verifies that he/she has indeed seen, read and understood the Bank's Staff by laws.


4/20/01 1:25:10 PM

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| **MOHAMED ELTABIB,** | ) | Civil Action No.: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **DOHA BANK, LTD.,** | ) | |
| | ) | |
| Defendant. | ) | |

# COMPLAINT

**LEVINE & BLIT, PLLC**
*Attorney(s) for Plaintiff*
MOHAMED ELTABIB
350 Fifth Avenue - Suite 3601
New York, New York 10118
Tel: (212) 967-3000
Fax: (212) 967-3010

To:

DOHA BANK, LTD.
100 WALL STREET, 19TH FLOOR
NEW YORK, NY 10005